1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10

11

12

13

14

15

16

| | | |
|---|---|---|
| MICHAEL BUSTAMANTE, | ) | 1:08-cv-01805 LJO MJS HC |
| Petitioner, | ) | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ) | |
| RICK HILL, Warden, | ) | |
| Respondent. | ) | |

17    Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

18   pursuant to 28 U.S.C. § 2254. Respondent, Rick Hill, as warden of Folsom State Prison is

19   hereby substituted as the proper named respondent pursuant to Rule 25(d) of the Federal

20   Rules of Civil Procedure.

21   **I.    PROCEDURAL BACKGROUND**

22    Petitioner is currently in the custody of the California Department of Corrections

23   pursuant to a judgment of the Superior Court of California, County of Kern, following his

24   conviction by jury trial on July 27, 2004, of attempted murder of a sheriff's deputy, possession

25   of a firearm by an ex-felon with a finding of the special circumstance that the attempted

26   murder was committed with premeditation and deliberation, with knowledge that the victim was

27

28

a police officer, and personal discharge of a firearm during an attempted murder. (CT[1], Vol. 2 at 420-29.) The trial court also found true allegations that Petitioner had suffered a prior serious felony conviction which qualified as a "strike" under California's "Three Strikes" law, and that he had severed a prior prison term. (Id. at 430-31.) On October 5, 2004, Petitioner was sentenced to serve a term of thirty years to life, plus twenty-five years, in state prison. (Id. at 461-62.)

Petitioner timely appealed to the California Court of Appeals, Fifth Appellate District (hereinafter "Fifth DCA"). On February 9, 2006, the judgment was affirmed in a reasoned opinion. (LD[2] 3.) Petitioner then filed a petition for review in the California Supreme Court. (LD 4.) On April 26. 2006, the petition was summarily denied. (LD 5.)

On January 26, 2007, Petitioner filed a habeas petition in the Kern County Superior Court. (LD 6.) The petition was denied on March 15, 2007, in a reasoned decision. (LD 7.) Petitioner then filed a habeas petition in the Fifth DCA, on May 3, 2007. (LD 8.) The Fifth DCA denied the petition on June 7, 2007. (LD 9.) On July 27, 2007, Petitioner filed a habeas petition in the California Supreme Court. (LD 10.) The petition was summarily denied on January 23, 2008.[3] (LD 11.)

On July 9, 2008, Petitioner filed the instant federal habeas petition. (Pet., ECF No. 6.) Petitioner raises the following grounds for relief:

A.) Ineffective assistance of counsel denying Petitioner his rights guaranteed under the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution based on nine separate events, namely,

1.) Failure to hire expert witnesses to combat the prosecutor's expert witnesses who testified on DNA matters;

---

[1]"CT" refers to the Clerk's Transcript on Appeal lodged by Respondent with his response.

[2]"LD" refers to the documents lodged by Respondent with his response.

[3]On December 17, 2007, Petitioner filed a second petition for writ of habeas corpus with the Kern County Superior Court. (LD 12.) The petition was denied on January 30, 2008 in a reasoned decision. (LD 13.) However, this petition is not relevant to the claims presented to this court.

2.) Failure to hire necessary assistance to test the DNA samples, as well as evidence that was seized;

3.) Failure to hire necessary people to dust the interior of the vehicle for fingerprints;

4.) Failure to hire handwriting experts to review handwritten letters the prosecution procured from the jail;

5.) Failure to hire re-enactment experts to prove that the victim was the person who had the best opportunity to identify the suspect;

6.) Failure to present meaningful arguments when cross-examining the victim;

7.) Failure to file motions regarding the search of petitioner's and material witness Lavenia Perez's jail cells;

8.) Failure to pursue available evidence that would exonerate petitioner, such as scientifically testing a baseball cap and black bandana that were allegedly covering the firearm used in the crime;

9.) Failure of trial counsel to call material witness Lavenia Perez as a witness; and

B.) Failure of prosecution to correct false testimony of prosecution's witness, thereby violating Petitioner's rights under the Fifth and Fourteenth Amendments. (Pet. at 9-11, 17-18.)

Respondent filed an answer to the petition on March 16, 2009, and Petitioner filed a traverse on February 16, 2009. (Answer & Traverse, ECF Nos. 25, 37.)

## II.   **FACTUAL BACKGROUND**[4]

On April 10, 2003, Kern County deputy sheriff Marvin Gomez was in uniform and driving a marked car. He saw a black Chrysler Sebring almost strike two pedestrians who were crossing the street.[5] The driver of the car was male and there was a female passenger with blond hair. The driver was wearing dark clothing and a dark hat.

Gomez attempted to stop the car, but the driver accelerated and drove away. Gomez followed the car. The driver then stopped the car in the middle of the road. Gomez saw the driver move his upper body out the driver's side window. The driver faced the patrol car, but Gomez could not see the driver

---

[4]The factual background is taken from the opinion of the state appellate court and is presumed correct. 28 U.S.C. § 2254(e)(1).

[5]The car was purchased by Lavenia Perez's mother. Defendant accompanied the mother and Lavenia to the dealership when they picked up the car after purchasing it.

clearly because there was a glare. He saw that the driver had something in his hand. The driver then locked his arms straight out and fired the gun at the driver's side windshield of the patrol car. Gomez ducked while several shots were fired at his vehicle.

The shooting stopped and Gomez saw the car drive away. He followed, but could not catch up to the escaping vehicle. He then arrived on the scene of where the car had crashed. The driver was not in the area. Lavenia Perez, defendant's girlfriend, was at the crash scene. She had the same hair color as the passenger Gomez had seen in the car.

Officers arrived at the scene of the crash shortly after 7:30 p.m.

Andrea Mendoza lived near the scene of the crash. Defendant is a friend of her brother. Defendant came in the back door of her house shortly after 7:30 p.m. He told her he had been in a car wreck and he needed her help. Mendoza asked him what was going on, but he would not tell her. He said he had "jacked" someone. Mendoza said defendant seemed scared.[6]

Officers responded to the scene and set up a perimeter. They found a blue jersey shirt in an alleyway. A gun and a hat were found in the car. Gomez said the hat definitely appeared to be the hat worn by the driver of the car. There appeared to be blood on the deployed passenger side airbag. Lavenia said she was injured from being struck by the airbag. Two women were in the area of the crash. They were paying particular attention to the vehicle. One of the women was defendant's mother.

During their search of the area, officers went to the home of Mendoza. She was asked to put her dogs inside so the officers could search the area. Officers returned to Mendoza's house in the early morning hours of April 11, 2003. At first she said she had not seen defendant that evening. Eventually she admitted that defendant had been at her house and he was in her bedroom when the police had come to her door earlier. Defendant stayed at her house for about an hour.

Criminalist Gregory Laskowski examined eight spent cartridges recovered from the patrol car. The cartridges had been fired from the .22 caliber revolver recovered from the Sebring. The patrol vehicle had been hit eight times. Four of the hits were on the hood. The other four penetrated the windshield; two of those bullets hit the driver's side headrest, one hit the steering wheel, and one hit the dashboard of the car.

The pistol grip and trigger of the gun were swabbed for DNA. Criminalist Brenda Smith extracted DNA from the shirt collar of the jersey and from the swab taken from the gun. She found at least three individuals contributed DNA to the shirt. Defendant could not be eliminated as a contributor to the shirt and the odds were 1 in 3,000 Hispanics that he was the contributor. Defendant was a major contributor of DNA to the gun. (There was also a minor contributor.) The frequency of a DNA profile like that of defendant's that was found on the gun

---

[6]At trial, Mendoza testified she could not remember what time defendant came to her house and she did not recall telling the officer who interviewed her that defendant said he was in a wreck.

1    was one in 380 billion Hispanic individuals.[7]

2        The court took judicial notice of documents showing that Lavenia Perez
3    was scheduled to appear as a witness under subpoena for defendant's
     preliminary hearing on May 15, 2003. She was taken into custody as a civilian
     witness on that date and her bail was set at $ 25,000. She was held in custody
4    for 376 days.[8] Jury selection for defendant's trial began on May 24, 2004. At
5    12:30 a.m. on May 25, 2004, detention officer Robert Hatch spoke to Lavenia
     Perez as she was being released on bond. Hatch told Lavenia that she was
6    required to be in court that morning for defendant's trial. She did not appear for
     trial and the case was dismissed. The case was refiled and the current jury trial
7    began on July 19, 2004. Officers were looking for Lavenia but were not able to
     locate her for trial.

8        A number of tape recorded telephone conversations between defendant
     and others while defendant was in jail awaiting his trial were played for the jury.
9    In addition, a number of notes from defendant to others were admitted into
     evidence. The notes and the telephone conversations exposed a plan by
10   defendant to have Lavenia bailed out of jail and for her to leave town.

11       Robert Contreras presented evidence regarding the Loma Baker criminal
     street gang. It was his opinion that defendant was a member of the Loma Baker
12   street gang and the crimes were committed for the benefit of the street gang.

13                              Defense

14       Francisco Vasquez was approximately 100 feet away from the accident.
     He saw someone jump out of the wrecked car. The person had on a jersey top.
15   The individual ran. Vasquez said that defendant does not look like the person
     who got out of the wrecked car.
16
17       On cross-examination, Vasquez testified that earlier he had said that the
     face on a photograph of defendant looked like the person who got out of the car.
18   He also testified that defendant had the same type of tattoos he saw on the
     person who got out of the car. Vasquez also testified that there was no
19   passenger in the car. He admitted that the sun was setting at the time he
     witnessed the accident and there were shadows in the area.

20   (LD 3 at 2-5.)

21   **III.    DISCUSSION**

22       **A.    Jurisdiction**

23       Relief by way of a petition for writ of habeas corpus extends to a person in custody

24   pursuant to the judgment of a state court if the custody is in violation of the Constitution or

25   laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams

26   _____

27       [7]For the Caucasian population the frequency was one in 2 trillion and in the African-American population
     it was one in 1 trillion individuals.

28       [8]Defendant later waived his preliminary hearing.

v. Taylor, 529 U.S. 362, 375 fn.7 (2000).  Petitioner asserts that he suffered violations of his

rights as guaranteed by the U.S. Constitution.  In addition, the conviction challenged arises

out of the Kern County Superior Court, which is located within the jurisdiction of this court.  28

U.S.C. § 2241(d); 2254(a). Accordingly, the Court has jurisdiction over the action.

## B.   **Legal Standard of Review**

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

enactment.  Lindh v. Murphy, 521 U.S. 320, 326 (1997); Jeffries v. Wood, 114 F.3d 1484,

1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA; thus,

it is governed by its provisions.

Under AEDPA, an application for a writ of habeas corpus by a person in custody under

a judgment of a state court may be granted only for violations of the Constitution or laws of the

United States. 28 U.S.C. § 2254(a); Williams v. Taylor, 529 U.S. at 375 n. 7 (2000). Federal

habeas corpus relief is available for any claim decided on the merits in state court proceedings

if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d).

### 1.   Contrary to or an Unreasonable Application of Federal Law

A state court decision is "contrary to" federal law if it "applies a rule that contradicts

governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are

materially indistinguishable from" a Supreme Court case, yet reaches a different result."

Brown v. Payton, 544 U.S. 133,  141 (2005) citing Williams, 529 U.S. at 405-06.  "AEDPA

does not require state and federal courts to wait for some nearly identical factual pattern

before a legal rule must be applied. . . . The statue recognizes . . . that even a general

standard may be applied in an unreasonable manner" Panetti v. Quarterman, 551 U.S. 930,

953 (2007) (citations and quotation marks omitted).  The "clearly established Federal law" requirement "does not demand more than a 'principle' or 'general standard.'" Musladin v. Lamarque, 555 F.3d 830, 839 (2009).  For a state decision to be an unreasonable application of clearly established federal law under § 2254(d)(1), the Supreme Court's prior decisions must provide a governing legal principle (or principles) to the issue before the state court. Lockyer v. Andrade, 538 U.S. 63, 70-71 (2003).  A state court decision will involve an "unreasonable application of" federal law only if it is "objectively unreasonable." Id. at 75-76, quoting Williams, 529 U.S. at 409-10; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002). In Harrington v. Richter, the Court further stresses that "an unreasonable application of federal law is different from an *incorrect* application of federal law." 131 S. Ct. 770, 785 (2011), (citing Williams, 529 U.S. at 410) (emphasis in original).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Id. at 786 (citing Yarborough v. Alvarado, 541 U.S. 653, 664 (2004)). Further, "[t]he more general the rule, the more leeway courts have in reading outcomes in case-by-case determinations." Id.; Renico v. Lett, 130 S. Ct. 1855, 1864 (2010). "It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419 (2009), quoted by Richter, 131 S. Ct. at 786.

### 2.   Review of State Decisions

"Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest on the same grounds." See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  This is referred to as the "look through" presumption.  Id. at 804; Plascencia v. Alameida, 467 F.3d 1190, 1198 (9th Cir. 2006). Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion,"does not require that there be an opinion from the state court explaining the state court's reasoning." Richter, 131 S. Ct. at 784-85. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by

showing there was no reasonable basis for the state court to deny relief." Id. ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

Richter instructs that whether the state court decision is reasoned and explained, or merely a summary denial, the approach to evaluating unreasonableness under § 2254(d) is the same: "Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. at 786. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. (citing Lockyer v. Andrade, 538 U.S. at 75). AEDPA "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents." Id. To put it yet another way:

> As a condition for obtaining habeas corpus relief from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id. at 786-87. The Court then explains the rationale for this rule, i.e., "that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. It follows from this consideration that § 2254(d) "complements the exhaustion requirement and the doctrine of procedural bar to ensure that state proceedings are the central process, not just a preliminary step for later federal habeas proceedings." Id. (citing Wainwright v. Sykes, 433 U.S. 72, 90 (1977).

### 3.    Prejudicial Impact of Constitutional Error

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 121-22 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness). Some constitutional errors, however, do not require

that the petitioner demonstrate prejudice.  See Arizona v. Fulminante, 499 U.S. 279, 310

(1991); United States v. Cronic, 466 U.S. 648, 659 (1984).  Furthermore, where a habeas

petition governed by AEDPA alleges ineffective assistance of counsel under Strickland v.

Washington, 466 U.S. 668 (1984), the Strickland prejudice standard is applied and courts do

not engage in a separate analysis applying the Brecht standard.  Avila v. Galaza, 297 F.3d

911, 918, n. 7 (2002).  Musalin v. Lamarque, 555 F.3d at 834.

## IV.    REVIEW OF PETITION

### A.    Ground One - Ineffective Assistance of Counsel

Petitioner presents nine claims regarding how trial counsel was ineffective in providing

Petitioner's defense. The claims were first presented in a habeas petition to the Kings County

Superior Court. (LD 6.) The superior court denied the claim in a reasoned decision, stating:

> The court notes that the petitioner must not raise conclusory allegations that have no foundation in reality. The petitioner must provide sufficient documentation to support his claim of ineffective assistance by Counsel Donna Lee Houghman. People v. Karis (1988), 46 Cal. 3d 612, 656, People v. Duvall (1995), 9 Cal. 4th 464, 474. Here we have no trial transcript which shows that there was any testimony of expert witnesses or reenactment witnesses. All the file contains is the preliminary hearing examination wherein petitioner was represented by a Mrs. Fowler. For the sake of discussion, petitioner must show that his counsel was so ineffective that there is the probability that the petitioner suffered prejudice due to the unfairness of the process. Strickland v. Washington (1984), 466 U.S. 668, 694. The documentation that petitioner provides shows an extensive cross-examination of Officer Gomez, and therefore, petitioner fails to show any prejudice resulting from that matter.

(LD 7.)

Petitioner then filed a habeas petition in the Fifth DCA and the California Supreme

Court. Both petitions were summarily denied. (LD 8-11.) The Fifth DCA and the California

Supreme Court are presumed to have denied the claim for the same reasons stated in the

courts below.  Ylst, 501 U.S. at 803.

### 1.    Ineffective Assistance of Counsel

The law governing ineffective assistance of counsel claims is clearly established for the

purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe,

151 F.3d 1226, 1229 (9th Cir. 1998).  In a petition for writ of habeas corpus alleging ineffective

assistance of counsel, the Court must consider two factors.  Strickland, 466 U.S. 668; Lowry

v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994).  First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 687; see also, Harrington, 131 S. Ct. 770 (2011).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," Strickland, 466 U.S. at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Id. at 687.  The Court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1348; United States v. Palomba, 31 F.3d 1456, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance. Id. at 692; United States v. Cronic, 466 U.S., at 659, and n.25 (1984).

As the Supreme Court reaffirmed recently in Harrington v. Richter, meeting the standard for ineffective assistance of counsel in federal habeas is extremely difficult:  ____

The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." Williams, supra, at 410, 120 S. Ct. 1495, 146 L. Ed. 2d 389. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ___, ___, 129 S. Ct. 1411, 1419, 173 L. Ed. 2d 251, 261 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. 770, 785-86 (2011).

"It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. at 786. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." Id. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Accordingly, even if Petitioner presents a strong case of ineffective assistance of counsel, this Court may only grant relief if no fairminded jurist could agree on the correctness of the state court decision.

### 2. Failure to Hire DNA Experts

Petitioner's first and second claims of ineffective assistance of counsel are that counsel failed to "render adequate assistance by not hiring expert witnesses to combat the prosecutor's expert witness who testified on DNA matters." (Pet. at 9.) Further, Petitioner asserts that if counsel would have hired experts to test other items of evidence found at the

scene including a bandana and baseball cap found in the car, they would have shown that they were not Petitioner's. (Pet. at 12.) At trial, the prosecution engaged a criminalist to test a gun found in the car and a jersey found in nearby alleyway. While there were other contributors of DNA to the items, the prosecution's expert testified that the odds were 1 in 3000 Hispanics that he was a contributor to the jersey, and 1 in 380 billion Hispanic individuals that he was a contributor to the gun. (Supp. RT[9] at 18-29.) On cross examination, defense counsel questioned the criminalist if, with objects such as the jersey and gun, which had multiple sources of DNA, if it was possible to tell who was the last individual to handle the object. The criminalist stated it was not possible to determine who was last to have deposited DNA on the object. (Supp. RT at 34.) During closing arguments defense counsel argued that the DNA evidence did not show when Petitioner handled the objects, or if he was the last person to handle the objects. (RT 4 at 705-707.)

Petitioner has not shown that defense counsel's actions fell below an objective standard of reasonableness. First, there was a significant amount of evidence, in addition to DNA evidence, linking Petitioner to the crime. According to the Fifth DCA in Petitioner's direct appeal:

> There was an abundance of evidence linking defendant to the crime in addition to the DNA evidence. Defendant's girlfriend, Lavenia, was at the scene of the wreck and her hair matched the description of the woman Gomez saw in the passenger seat of the car. The car belonged to Lavenia's mother. Defendant wrote numerous notes and had numerous telephone conversations to make sure that Lavenia was released from jail and was not available to testify. Defendant ran into the home of Mendoza, who lived near the crash scene, right around the time of the crash. He looked scared, told her he had been in a wreck, and needed her help. The fact that Gomez could not identify defendant does nothing to diminish the above evidence. The People were not required to show when or where defendant's DNA was left on the gun and the jersey because in light of the other evidence it was a reasonable inference that his DNA was left on the gun and the jersey because he used the gun and wore the jersey at the time of the attempted murder.

> Substantial evidence supports defendant's conviction of attempted murder.

(LD 3 at 6-7.)

---

[9]"RT" refers to the Reporter's Transcript on Appeal lodged by Respondent with her response.

1   Based on the significant amount of evidence against Petitioner, it is likely, and
2   reasonable that Petitioner's counsel decided not to focus her energies and resources on hiring
3   an expert to challenge DNA evidence or test the bandana and cap because she reasonably
4   anticipated Petitioner's DNA would be present on all of the items and a rebuttal expert would
5   be of little help in trying to show otherwise.  Based on the large amount of evidence linking
6   Petitioner to the crime, hiring an expert would have been an unnecessary allocation of
7   resources. Without the use of an expert, defense counsel was able to attempt to create doubt
8   by pointing out that the DNA of other people were found on the items.

9   Additionally, Petitioner has failed to show that he was prejudiced under Strickland due
10  to the failure to hire a rebuttal expert. Petitioner does not explain how an expert would have
11  assisted the defense but to say that the expert may have been used to contradict the
12  prosecution's expert. (Pet. at 3.) Without stating more, Petitioner has not overcome his burden
13  to show he was prejudiced by the failure to hire an expert. See Grisby v. Blodgett, 130 F.3d
14  365, 373 (9th Cir. 1997) (speculating as to what a proposed witness would say is not enough
15  to establish prejudice). The state court's rejection of the claim was neither contrary to nor an
16  unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's first
17  and second claims of ineffective assistance of counsel are without merit.

18  3.   Failure to Independently Test for Fingerprints

19  Petitioner's third claim of ineffective assistance of counsel is based on counsel's failure
20  to hire experts to dust the interior of the vehicle for prints. Petitioner alleges that if counsel
21  hired experts to dust the interior of the vehicle, they could have compared those to other
22  fingerprints taken from the outside of the vehicle that did not match Petitioner and that the
23  evidence would 'exonerate' Petitioner (Pet. at 13.)

24  At trial, Diane Woods, an evidence technician with the Kern County Sheriff's
25  Department, testified that she processed the driver side exterior of the suspect vehicle for
26  fingerprints. (RT 3 at 304.) Ms. Woods stated that she "did get a couple of latents" and that
27  they did not match the fingerprints of either Petitioner or Lavenia Perez. (Id. at 307.) Further,
28  defense counsel inquired, and Ms. Woods indicated, that a different technical investigator

processed the interior of the vehicle for fingerprints. (Id. at 311.) Counsel for Petitioner subsequently argued in her closing argument to the jury:

> [R]emember, there were no fingerprints that established [Petitioner] . . . was in the car; none on the outside of the door, none on the mirror on the inside, nothing to establish fingerprints that he was in that car at that time. (4 RT 723.)

Petitioner has not overcome his burden to show he was prejudiced by the failure to hire an expert. See Grisby, 130 F.3d at 373. Petitioner's fingerprints were found on the vehicle, and prosecution experts testified that they examined the exterior and interior of the vehicle. "Strickland... permits counsel to 'make a reasonable decision that makes particular investigations unnecessary.'" Harrington, 131 S. Ct. At 788 (citing Strickland, 466 U.S., at 691). Here, as noted by Respondent, counsel's decision not to devote resources and energies to hiring an expert to reexamine the car for fingerprints justifiably could have been based on the reasonable expectation that Petitioner's prints would be found on the vehicle. (Answer at 17.) As described above, a significant amount of evidence placed Petitioner at the scene of the crime and in the car purchased by his girlfriend's mother. Defense counsel acted reasonably in electing not to test the interior of the vehicle for fingerprints. The state court's rejection of the claim was neither contrary to nor an unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's third claim of ineffective assistance of counsel is without merit.

### 4.   Failure to Test Petitioner's Handwriting on Notes

Petitioner's fourth claim of ineffective assistance of counsel is based on counsel's failure to hire a handwriting expert to determine if jailhouse notes (commonly referred to as "kites") were written by Petitioner. Specifically, Petitioner states, "If trial counsel would have hired hand writing experts, the could have easily determined that the petitioner did not write all of those letters (Kites) and the prosecution wouldn't have been able to use them against the petitioner..." (Pet. at 13.)

At trial, District Attorney Investigator Trent Sproles testified that when he searched Petitioner's jail cell on December 18, 2003, pursuant to a search warrant, he seized a letter

inside an envelope addressed from Petitioner to another person, and he seized a second letter

as well. (RT 3 at 339-41; see also Supp. CT, Exs. 24-25.) Investigator Sproles further testified

that when he searched Lavenia Perez's jail cell that same day, again pursuant to a search

warrant, he found a paper bag full of letters or notes "from or signed" by Petitioner. (RT 3 at

351-52.) Detention Officer Anthony Lewis of the Kern County Sheriff's Department testified

that when he unraveled the cuffs of Petitioner's trousers during a July 16, 2004, jailhouse

search, a piece of paper fell to the ground. (RT at 354-356,see also Supp. CT, Ex. 26.)

In its opinion on Petitioner's appeal from his conviction, the California Court of Appeal

noted:

> A number of tape recorded telephone conversations between defendant [i.e., Petitioner] and others while defendant was in jail awaiting his trial were played for the jury. In addition, a number of notes from defendant to others were admitted into evidence. The notes and the telephone conversations exposed a plan by defendant to have Lavenia [Perez] bailed out of jail and for her to leave town.

(LD 3 at 4.)

People's Exhibits 24, 25, and 26 were among the notes to which the California Court

of Appeal was referring. Several of letters were signed "Mike," Petitioner's first name. (Supp.

CT, Exs. 24-25.)

Once again, defense counsel was not ineffective for failing to have the notes and letters

tested by a handwriting expert. As stated above, significant evidence was presented regarding

Petitioner's alleged participation in the crime. The notes were found either on Petitioner, in his

jail cell, or in the jail cell of Ms. Perez. It is very reasonable that defense counsel reasonably

believed that the notes were drafted by Petitioner. Further, while the notes were damaging to

Petitioner's case in that they presented evidence that Petitioner was trying to keep Ms. Perez

from testifying, the notes did not relate to the underlying facts of the crime. Regardless,

showing the notes were written by someone else would not in any event refute evidence that

Petitioner was the perpetrator of the crime, As such a reasonable attorney could have thought

it futile, wasteful and perhaps even absurd to hire an expert to investigate the handwriting on

the notes.

1    Petitioner merely asserts that he would be exonerated by the evidence that a

2   handwriting expert would produce. He makes no showing whatsever to support that assertion.

3   Petitioner's counsel acted reasonably in not hiring a handwriting expert. Petitioner has not

4   overcome his burden to show he was prejudiced by the failure to hire an expert. See Grisby,

5   130 F.3d at 373. The state court's rejection of the claim was neither contrary to nor an

6   unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's

7   fourth claim of ineffective assistance of counsel is without merit.

8           5.      Failure to Hire Re-enactment Expert

9           Petitioner fifth claim of ineffective assistance of counsel was based on counsel failing

10   "to hire reenactment experts, to prove that the victim Marvin Gomez was the only person who

11   could have identified the suspect who he alleged was right in front of him." (Pet. at 14.)

12   Petitioner further alleged that "There is more than a reasonable probability that but for

13   counsels [sic] unprofessional efforts the results of the proceedings would have been different."

14   (Id.)

15          Deputy Gomez testified that he was not able identify Petitioner.  He testified that the

16   driver of the suspect vehicle quickly came out of the window and started shooting at him.

17   However, Deputy Gomez "started ducking down for cover" as soon as the driver fired the first

18   shot at him (CT 1 at 186-87) and that it was "[v]ery quick, just a matter of seconds" between

19   when he first saw the driver emerge from the window, with a gun in his hand, when the driver

20   fired the first shot (CT 1 at 204-05). Deputy Gomez further indicated that "the sun and the

21   glare" contributed to his inability to identify the shooter. (See Ct 1 at 221.)

22          Once again Petitioner has not described how additional experts would have significantly

23   aided his defense. Here, he asserts that re-enactment experts would have shown that Deputy

24   Gomez was in the best position to see the shooter. Regardless, Deputy Gomez stated that he

25   was unable to identify the shooter because of the glare of the sun and the fact that he had to

26   duck for cover. Even if an re-enactment expert could show that Deputy Gomez was in a good

27   position to see the shooter, he did not do so, and therefore could not provide exculpatory

28   evidence that it was someone besides Petitioner. Counsel was again reasonable in not hiring

1    such an expert and the state court's rejection of the claim was neither contrary to nor an

2    unreasonable application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's fifth

3    claim of ineffective assistance of counsel is without merit.

4                6.      Ineffective Cross-Examination of Deputy Gomez

5            Petitioner's sixth claim of ineffective assistance of counsel is based on counsel's

6    allegedly ineffective cross-examination of Deputy Gomez. Specifically, Petitioner states, "If trial

7    counsel would have presented a strong argument when she cross examined the victim, the

8    jury would have heard contradicting testimony from him due to the fact that his previous

9    statements were conflicting." (Pet. at 15.)

10           In support of this allegation of ineffective assistance, Petitioner attaches copies of

11   testimony from Deputy Gomez's testimony at a  May 15, 2003, preliminary hearing and at trial.

12   Petitioner also attached pages 5 through 8 of a supplemental report of the Kern County

13   Sheriff's Department, in which the author described statements made by Deputy Gomez. (See

14   CT at 62-65).

15           In its March 15, 2007, order denying Petitioner's petition for writ of habeas corpus, the

16   Kern County Superior Court dismissed this claim as follows: "The documentation that

17   [P]etitioner provides shows an extensive cross-examination of Officer Gomez, and therefore,

18   [P]etitioner fails to show any prejudice resulting from that matter." (LD 7 at 2.) This Court

19   agrees. Petitioner has failed to satisfy the first prong under Strickland with respect to this claim

20   as he has failed to show that counsel's cross-examination of Deputy Gomez was deficient.

21   Counsel's cross-examination of Deputy Gomez was extensive, totaling of fifteen pages of the

22   reporter's transcript, roughly the same number of pages as the prosecution's direct and

23   redirect examination. (See RT 2 at 112-41.) Further, even assuming that counsel's cross-

24   examination was deficient, Petitioner fails to establish prejudice under the second prong of

25   Strickland. Petitioner attempts to argue that counsel failed to impeach Deputy Gomez at trial

26   by using prior testimony from the May 15, 2003 preliminary hearing. However, Petitioner fails

27   to describe any inconsistences, let alone material inconsistencies, in Deputy Gomez's

28   testimony at the hearing and trial. Deputy Gomez did not identify the Petitioner, however, his

1  testimony that he was fired upon by the suspect is supported by significant physical evidence

2  at the crime scene. As Deputy Gomez could not identify Petitioner, the jury had to rely on other

3  evidence to determine that he was guilty of the offense, and more effective cross-examination

4  of Deputy Gomez would not have changed the jury's outcome.

5      The state court's adjudication of this claim was neither contrary to nor an unreasonable

6  application of Strickland, and Petitioner is not entitled to relief.

7              7.    Failure to Challenge Conduct of District Attorney

8      Petitioner's seventh claim of ineffective assistance of counsel is based on counsel's

9  failure to appropriately challenge the District Attorney's conduct with regard to executing a

10 search warrant and speaking with Lavenia Perez. Specifically, Petitioner states, "The jury

11 could have heard that they were trying to intimidate the material witness Lavenia Perez, so she

12 could lie for them, any competent attorney could have used this illegal tactic to get the case

13 dismissed based on the fact that the DA and his investigator tampered with a witness." (Pet.

14 at 15.)

15     In support of Petitioner's claim, Petitioner filed a supplemental affidavit of Lavenia

16 Perez. The affidavit was never presented to the California Supreme Court. Despite Petitioner's

17 failure to present the information to the state courts, Respondent, in her answer,  does not

18 object to the filing of the affidavit, and the Court granted the motion to consider the affidavit

19 on September 17, 2009. (Order, ECF No. 32.) However, the Supreme Court in Cullen v.

20 Pinholster, 131 S.Ct. 1388, 1398 (2011), recently held that "review under § 2254(d)(1) is

21 limited to the record that was before the state court that adjudicated the claim on the merits."

22 While the affidavit presents similar information to that presented to the state court, this Court

23 cannot consider it in determining of the decision of the state court was unreasonable. Cullen,

24 131 S. Ct. at 1398. ("This backward-looking language requires an examination of the

25 state-court decision at the time it was made. It follows that the record under review is limited

26 to the record in existence at that same time--i.e., the record before the state court.")

27 Accordingly, the Court cannot consider the supplemental affidavit in determining the merits of

28 the petition.

1    Petitioner also presented evidence in the form of portions of the trial transcript regarding

2  Investigator Sproles' trial testimony attached as Exhibit D to the petition. Reported therein is

3  Investigator Sproles' testimony that when he searched Perez's jail cell, he played for Perez

4  some tapes of Petitioner speaking from jail over the telephone with other women. Sproles

5  further testified that his purpose in playing the taped telephone calls between Petitioner and

6  other women for Perez "was to inform her that she was not the only person that he was

7  corresponding with," to make sure she was aware "that there was other people that [Petitioner]

8  was associating with in more of a friendlier way," and "to make sure that she knew all the facts

9  and why she was where she was at." (RT 3 at 341-51.)

10    The trial testimony of Sproles also included that based on his conversations with

11  Perez's family, it was his understanding that Perez was "greatly in love" with Petitioner and she

12  believed the feeling was mutual. (RT 3 at 351.) When Sproles searched Perez's jail cell he

13  found a paper bag full of letters or notes "from or signed" by Petitioner (RT at 351-52.), and

14  when he searched Petitioner's cell, he found the same type of correspondence written by

15  Perez to Petitioner. (RT 3 at 352). Finally, Sproles stated on recross-examination that the

16  reason he played the taped conversations for Perez was that he "felt [he] had a need to inform

17  her of what was – the correspondence [Petitioner] was having with other people." (RT 3 at

18  352.)

19    Petitioner claims that counsel was ineffective for not challenging the actions of the

20  District Attorney and Investigator Sproles based on his contention that Sproles' purpose in

21  playing the tapes of the telephone calls for Perez was to convince her to testify falsely that

22  Petitioner was the person who fired the shots at Deputy Gomez from the suspect vehicle.

23  Petitioner has again failed to show that defense counsel's conduct was ineffective under

24  Strickland. Even assuming that the district attorney was attempting to convince Perez to testify

25  falsely against Petitioner, Perez did not appear at trial and therefore did not testify falsely

26  against Petitioner.

27    Furthermore, Perez identified Petitioner as the shooter in her initial statements to law

28  enforcement, well before the discussion with Investigator Sproles took place. (See CT 1 at

227- 31 (at the May 15, 2003, preliminary hearing, Sergeant Michael Whiting testified that, on the day the charged crimes, Perez identified her boyfriend, Petitioner, as the shooter); CT 1 at 254-58 (Deputy Roger Clark also testified at the preliminary hearing that, the day after the charged crimes and again three days later, Perez identified Petitioner as the shooter); see also CT 1 at 12 (Deputy District Attorney Mark Pafford' declaration stating that Perez told "numerous enforcement officers," and also told her sister, that Petitioner was the shooter). Further, Perez's initial statements identifying Petitioner as the shooter were corroborated by significant DNA evidence found on the gun that fired the shots and on a jersey located at the scene and additional physical evidence and testimony described above.

Petitioner has failed to demonstrate that Investigator Sproles' purpose in playing the tapes for Perez was to convince her to untruthfully implicate Petitioner in the charged crimes. Further, Petitioner has failed to show prejudice as Perez did not provide any damaging testimony after speaking with Investigator Sproles. Accordingly, he has failed to demonstrate that counsel performed unreasonably in not filing 'motions' regarding the alleged tampering of a witness. The state court correctly rejected Petitioner's claim that counsel was ineffective for not filing unspecified 'motions' in response to the testimony of Investigator Sproles. The state court's adjudication of this claim was neither contrary to nor an unreasonable application of Strickland, and Petitioner's seventh claim of ineffective assistance of counsel is without merit.

### 8.    Failure to Pursue Exonerating Evidence

Petitioner's eighth claim of ineffective assistance of counsel is based on counsel's failure "to pursue available evidence that would have exonerated the petitioner, such as a baseball cap and black bandana that... Gomez said was covering the firearm." (Pet. at 10.) While Petitioner's claim is conclusory, it appears that Petitioner is again stating that defense counsel was ineffective for failing to test additional items of evidence available at the crime scene. Petitioner's claim fails for the same reasons as stated for in Petitioner's second claim of ineffective assistance of counsel. Again, significant evidence in the form of both physical evidence and testimony of witnesses existed placing Petitioner as the suspect, and defense

1  counsel could have legitimately feared to test additional items as such testing may have further

2  linked Petitioner to the scene. Defense counsel's actions did not fall below an objective level

3  of reasonableness in not testing the additional evidence.

4      The state court's rejection of the claim was neither contrary to nor an unreasonable

5  application of Strickland. See Harrington, 131 S. Ct. at 785-86. Petitioner's eighth claim of

6  ineffective assistance of counsel is without merit.

7          9.    Alleged Advice to Tell Witness Not to Attend Trial

8      Petitioner's ninth claim of ineffective assistance of counsel is based on Petitioner's

9  assertion that defense counsel improperly advised Lavenia Perez to not attend the trial, and

10  that due to defense counsel's advice, Ms. Perez did not present evidence at trial that Petitioner

11  did not shoot at Deputy Gomez. Petitioner supports this claim with the facts included in the

12  supplemental affidavit of Lavenia Perez. As stated above, this Court cannot consider affidavit

13  in determining of the decision of the state court was unreasonable. Cullen, 131 S. Ct. at 1398.

14  Regardless, as Petitioner has presented similar allegations in his petition, the review of the

15  claim is relatively unaffected.

16      First, Petitioner has not presented any credible evidence that defense counsel indeed

17  instructed Ms. Perez not to attend the trial. Further, there is no reasonable probability that the

18  outcome of the trial would be different if she had testified. While Perez could have testified at

19  trial that Petitioner was not driving the vehicle or shot at the victim, there was significant

20  testimony in the form of her statements after the incident that Petitioner was indeed the

21  shooter. Based on the readily available impeachment testimony against Ms. Perez and her

22  relationship with Petitioner, it is unlikely that her testimony would be considered credible by

23  the jury. Accordingly, the state court's rejection of this claim was neither contrary to nor an

24  unreasonable application of Strickland. Thus, Petitioner is not entitled to federal habeas relief

25  on this ninth and final claim of ineffective assistance of counsel.

26      **B.    Ground Two - Prosecution's Failure to Correct False Testimony**

27      Petitioner claims that false evidence was used to secure his conviction in violation of

28  his rights under the Fifth and Fourteenth Amendments. In support of this claim, Petitioner

1  alleges  the search of his jail cell, the search of Lavenia Perez's jail cell, and the resulting

2  conversations were done to convince Ms. Perez to lie about the shooter for the benefit of the

3  prosecution. Specifically, Petitioner states, "They tampered with a witness [and] when asked

4  about the incident in court, Trent Sproles lied [and] gave false testimony for the prosecution.

5  While on the stand Trent Sproles was asked about why he felt he needed to bring a tape

6  recorder to execute a search warrent [sic] because his sole purpose was to seize mail from

7  [P]etitioner and Perez when clearly they had ulterior motives going into the cell of Perez. The

8  District Attorney knew he was testifying falsely but yet failed to correct his testimony. . . ." (Pet.

9  at 17-18.) Petitioner relies on Investigator Sproles testimony at trial, wherein Sproles states

10  that he only wanted Ms. Perez to know what Petitioner was doing, when Petitioner alleges that

11  Sproles was attempting to get Ms. Perez to lie on the prosecution's behalf.

12       The knowing use of perjured testimony against a defendant to obtain a conviction

13  violates a criminal defendant's federal right to due process of law. Napue v. Illinois, 360 U.S.

14  264, 268-70 (1959); see also Hayes v. Brown, 399 F.3d 972, 978 (9th Cir. 2005) ("One of the

15  bedrock principles of our democracy, implicit in any concept of ordered liberty, is that the State

16  may not use false evidence to obtain a criminal conviction." (internal citations omitted)).

17  Petitioner bears the burden of "alleg[ing] facts showing that there was knowing use of the

18  perjured testimony by the prosecution." Pavao v. Cardwell, 583 F.2d 1075, 1076 1077 (9th Cir.

19  1978). In the context of the presentation of false evidence, Petitioner must prove all of the

20  following: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or

21  should have known that the testimony was actually false, and (3) that the false testimony was

22  material." United States v. Zuno Arce, 339 F.3d 886, 889 (9th Cir. 2003) (citing Napue, 360

23  U.S. at 269 271.) Under Napue, false testimony is material, and therefore prejudicial, if there

24  is "any reasonable likelihood that the false testimony could have affected the judgment of the

25  jury." Hayes, 399 F.3d at 984 (internal citation omitted).

26       The fact that there may be inconsistencies in certain witnesses statements and other

27  conflicts in the evidence do not establish that the prosecution presented false testimony. See

28  United States v. Zuno Arce, 44 F.3d 1420, 1423 (9th Cir. 1995) (inconsistencies between

1  testimony at trial and retrial did not amount to presentation of false testimony); see also United

2  States v. Croft, 124 F.3d 1109, 1119 (9th Cir. 1997) ("that a witness may have made an

3  earlier inconsistent statement, or that other witnesses have conflicting recollection of events,

4  does not establish that the testimony offered at trial was false"). Mere speculation regarding

5  these factors is insufficient to meet the petitioner's burden. United States v. Aichele, 941 F.2d

6  761, 766 (9th Cir. 1991).

7        In this case, Petitioner has failed to demonstrate that Investigator Sproles' testimony

8  was, in fact, false. In support of his claim, Petitioner supplies copies of Investigator Sproles'

9  trial testimony, records relating to the search warrant of Lavenia Perez's cell, and inmate

10 grievances filed by Petitioner after his cell was searched.   Again, Petitioner's claim is that

11 Investigator Sproles lied at trial when he testified that he was just attempting to let Ms. Perez

12 know of Petitioner's communication with other women  "to make sure that she knew all the

13 facts and why she was where she was at." (3 RT 341-51.) Petitioner alleges that Sproles' true

14 purpose of searching Lavenia Perez's cell and speaking with her was to convince her to lie and

15 testify against Petitioner.

16       First, it should be noted that Petitioner's claim is based on allegedly false testimony

17 regarding  Investigator Sproles intent in speaking to the witness. Intent is subjective and

18 difficult to prove (particularly where as here logic belies the supposed intent) and arguably is

19 wholly irrelevant except insofar as it might reflect on the witnesses overall credibility. All of

20 Investigator Sproles' statements at trial were consistent with his stated intent to let Ms. Perez

21 know of information regarding Petitioner's conduct with other women. It is difficult to infer, and

22 much more difficult to show, that Investigator Sproles' true intent was to convince Ms. Perez

23 to lie at trial. Petitioner has provided no further evidence or statements from Investigator

24 Sproles that would support such a claim. In fact, reason suggests that Investigator Sproles

25 intent was  just the opposite, i.e., to discourage Ms. Perez from lying on the stand in an

26 attempt to protect Petitioner whom she felt was her boyfriend.

27       Moreover, well before Investigator Sproles spoke with Perez, she had stated to law

28 enforcement that Petitioner was the shooter. (See CT 1 at 12, 227-31, 254-58.) Thus there is

U.S. District Court
E. D. California

-23-

1   no reason to believe that  an attempt to have her testify for the prosecution would anticipate

2   false testimony.

3           Given the evidence, it would be unreasonable to suggest, much less find, that the

4   District Attorney and Investigator Sproles knew Petitioner was not the suspect, and

5   nevertheless undertook to convince Ms. Perez to testify falsely.

6            Petitioner has failed to show that Sproles' testimony was actually false.  Even if falsity

7   had been established, he has failed to show that  the prosecution knew or should have known

8   of that falsity.

9           Further, Ms. Perez did not testify at trial.  She did not provide testimony to damage or

10  support either the prosecution or defense. Petitioner thus can not say he was prejudiced by

11  the alleged attempt to garner false evidence from her.  He does claim she did not testify

12  because of defense counsel's instruction to her not to appear. However, in the final analysis,

13  Petitioner was convicted based on significant evidence from the crime scene and other

14  witnesses. Petitioner has not shown any reasonable likelihood that testimony from Ms. Perez

15  was favorable to  Petitioner, who earlier made statements identifying him as the shooter, or

16  that any allegedly false statements from Investigator Sproles affected the judgment of the jury.

17  Accordingly, Petitioner has not shown that the state court's denial of this claim was a contrary

18  or unreasonable application of Federal law under 28 U.S.C. § 2254(d)(1). Petitioner is not

19  entitled to federal habeas relief on his claim based on the prosecution's failure to correct false

20  testimony.

21  **V.    RECOMMENDATION**

22          Accordingly, IT IS HEREBY RECOMMENDED that the petition for a writ of habeas

23  corpus be DENIED WITH PREJUDICE. It is FURTHER RECOMMENDED that the Clerk of

24  Court be DIRECTED to enter judgment.

25          This Findings and Recommendation is submitted to the assigned District Judge,

26  pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within fourteen (14) days after being

27  served with the Findings and Recommendation, any party may file written objections with the

28  Court and serve a copy on all parties.  Such a document should be captioned "Objections to

Magistrate Judge's Findings and Recommendation."  Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


IT IS SO ORDERED.

Dated:  ___September 12, 2011___        /s/ *Michael J. Seng*
                                        UNITED STATES MAGISTRATE JUDGE